UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DEREK THOMAS, : | |
|     Petitioner, : | |
| : | |
| v. : | C.A. No. 24-513WES |
| : | |
| WARDEN MICHAEL NESSINGER, et al., : | |
|     Respondents. : | |

### REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

*Pro se* Petitioner Derek Thomas is a prisoner serving a fifteen-year incarcerative sentence imposed by the District of Vermont on March 31, 2014, for production of child pornography. As the final months of this sentence neared, Petitioner was transferred by Federal Bureau of Prisons ("FBOP") to a residential reentry center (the Houston House in Pawtucket, Rhode Island). Other than FBOP's selection of the Houston House for Petitioner's reentry placement, the record does not reflect that Petitioner had ever had any contact with Rhode Island.[1] Based on FBOP findings of misconduct following discipline hearings, Petitioner was returned to custody with temporary placement at the Wyatt Detention Facility ("Wyatt"), a quasi-public detention facility located in Central Falls, Rhode Island, and then to FBOP prison facilities in Pennsylvania to complete his sentence. While temporarily held at the Wyatt, Petitioner filed[2] a habeas petition in the District

---

[1] The decision of the Second Circuit affirming Petitioner's criminal conviction clearly describes him as having been a resident of Vermont. United States v. Thomas, 788 F.3d 345, 348 (2d Cir. 2015) (referencing the "physical address in Vermont, which turned out to be where defendant Derek Thomas lived"). Confirming Petitioner's contacts with Vermont is the judgment in his criminal case, which includes the judicial recommendation that he "be incarcerated as close to Vermont as possible." United States v. Thomas, 5:12-cr-37-CR (ECF No. 133 at 2).

[2] Pursuant to the so-called mailbox rule, the petition was effectively "filed" by mailing it on November 29, 2024, to the District of Rhode Island. See Rule 3(d) of Rules Governing Section 2254 Cases in the United States District Courts; see also Rule 1(b) of Rules Governing Section 2254 Cases in the United States District Courts ("district court may apply any or all of these rules to a habeas corpus petition not [filed under § 2254]"). By the time it was received and docketed a week later, Petitioner was already gone from the Wyatt, on his way to an FBOP facility in Pennsylvania. ECF No. 7 at 4.

of Rhode Island pursuant to 28 U.S.C. § 2241 directed to the Warden of the Wyatt, and to FBOP, an agency based in Washington, D.C. and its Northeast Regional Director, Amy Boncher, whose offices are in Philadelphia, Pennsylvania.  ECF No. 1.  Other than the Warden of the Wyatt, the petition names no person located in Rhode Island; as far as the Court is aware or the record reflects, there are no FBOP offices or facilities in Rhode Island.  The habeas petition challenges the extension of the incarcerative portion of Petitioner's sentence based on discipline imposed by FBOP (resulting in the loss of goodtime credit) while he was in FBOP pre-release custody at the Houston House, which Petitioner alleges is in derogation of his due process rights, his status as a disabled person and his actual innocence.  ECF Nos. 1 at 1-2; 1-1 at 7-21.

In addition to the habeas petition, now pending before the Court are a motion to proceed *in forma pauperis* ("IFP") (ECF No. 3); a motion for preliminary injunction, (ECF No. 2); a motion for temporary restraining order (ECF No. 5); and an emergency motion for restraining order and request for immediate show cause (ECF No. 6).  The injunctive relief motions are focused on the interruption of medical treatment that Petitioner had initiated with various specialists while at the Houston House and the refusal of the Wyatt to continue such specialty treatment while Petitioner was temporarily placed there.  The IFP motion and the three motions for injunctive relief have been referred to me for report and recommendation.  Also pending is the opposition of the United States as Respondent to the habeas petition, together with its motion to dismiss (which is not referred and has not yet been fully briefed) the petition because Petitioner is now in the custody of an FBOP facility in the Western District of Pennsylvania and is no longer at the Wyatt, so that its Warden is not his immediate custodian, and this Court cannot grant habeas relief, which is issuable only in the district of confinement.  ECF No. 7.  Respondent also asks the Court to dismiss the petition because Petitioner concedes that he failed

fully to exhaust administrative remedies. Id. Filed on December 19, 2024, this opposition supplements the record with the Declaration of FBOP residential reentry manager Patrick McFarland (ECF No. 7-1, "McFarland Declaration").

### I.     Background

#### A.     Proceedings in the District of Vermont

Since 2014, Petitioner has been in the custody of FBOP serving the fifteen-year incarcerative portion of the sentence imposed by the District of Vermont in Thomas, 5:12-cr-37-CR (ECF No. 133). Petitioner's Vermont sentence also requires him to serve an eight-year term of supervised release after the incarcerative term is completed. Id. at 4. Among Petitioner's supervised release conditions are the standard requirements that, unless supervision is transferred to another District, which has not occurred as far as the docket reflects, he must return to the District of Vermont and may not leave that District except with permission of the sentencing court or the probation office. Id.

In the District of Vermont, Petitioner filed a motion to vacate this sentence pursuant to 28 U.S.C. § 2255, which was denied. United States v. Thomas, No. 5:12-CR-37, 2018 WL 4146596, at *18 (D. Vt. Aug. 30, 2018), adopted, 2:16-cv-327-cr-jmc, ECF No. 2, appeal dismissed sub. nom. Thomas v. United States, No. 20-953, 2020 WL 5505917, at *1 (2d Cir. Aug. 25, 2020) ("[a]ppellant has not 'made a substantial showing of the denial of a constitutional right'"). In Vermont, Petitioner has also filed four motions for compassionate release and/or for immediate release based on medical concerns, together with related motions for reconsideration. Thomas, 5:12-cr-37-CR (ECF Nos. 186, 200, 216, 240, 261, 273, 286). For several of these motions, the Vermont court appointed an attorney to represent Petitioner and conducted

transcribed hearings at which Petitioner was remotely present.[3]  E.g., id. (ECF Nos. 236, 237).  All of these motions were denied.[4]

After the Houston House discipline ended his community placement at the Houston House, while in temporary custody at the Wyatt, Petitioner filed a motion to commute the remainder of the incarcerative portion of the sentence pursuant to 18 U.S.C. § 3582(c)(1)(A).  Thomas, 5:12-cr-37-CR (ECF No. 290).  This motion is currently pending in the District of Vermont.  Important in light of Petitioner's allegation in this Court that he "has no remedy other than this application for a writ of habeas corpus" issued by the District of Rhode Island, ECF No. 1 at 2, this Vermont motion to commute is based on the same medical-treatment arguments that Petitioner has presented to the District of Rhode Island in this case.  To facilitate such medical treatment, Petitioner's motion to commute asks the District of Vermont to convert the remainder of his incarcerative sentence to ninety days of extra supervised release with supervision transferred to the District of Rhode Island and up to the first six months of supervision at the Houston House.  Id. at 8.  This prayer for relief addressed to the District of Vermont (the Court that has jurisdiction over his criminal case) is echoed in Petitioner's filing in this Court in which he states his "intent to transfer his Supervised Release to the District of Rhode Island, where [he] hoped to rebuild his life, and is accepted in his community."  ECF No. 5 at 11-12.

      B.     Proceedings in the District of Rhode Island

---

[3] The Vermont court stopped appointing an attorney for Petitioner after he declined the appointed attorney for his third motion for compassionate release.  Thomas, 5:12-cr-37-CR (ECF No. 242).

[4] Petitioner represents – inaccurately – that the District of Vermont granted his penultimate compassionate release motion and asks this Court to order Respondent to show cause why he is not now on supervised release under the control of United States Probation in the District of Vermont.  ECF No. 6 at 2-3.  In fact, that motion was denied as moot due to Petitioner's status as of then at the Houston House.  Thomas, 5:12-cr-37-CR (Text Order of Aug. 26, 2024).  Petitioner's next motion for compassionate release was denied on the merits because he "failed to show extraordinary circumstances."  Id. (Text Order of Nov. 18, 2024).  Based on these docket entries in Petitioner's criminal case in Vermont, I recommend that Petitioner's request for a show cause order be denied.  It will not be discussed further in this report and recommendation.

The record is devoid of any evidence that Petitioner had ever had any contact with Rhode Island until February 27, 2024, when, pursuant to the Second Chance Act, while still serving the incarcerative portion of his Vermont sentence in FBOP custody, Petitioner was transferred by FBOP to a residential reentry center (the Houston House) located in Pawtucket, Rhode Island, under the custodial control of FBOP's New York Residential Reentry Management Office. ECF No. 5 at 2; McFarland Dec. ¶ 7. Because he was able to access the community from the Houston House after this placement began, Petitioner commenced the process of initiating health care for various medical conditions with specialists located in Rhode Island. ECF No. 5 at 3.

Soon after Petitioner arrived at the Houston House, the first discipline incident in issue occurred. Specifically, in March 2024, Petitioner failed to provide a urine sample, which he claims was caused by a medically determined urinary retention issue that was not diagnosed until after his failure to provide a urine sample. Id. at 2-3. Despite Petitioner's submission of medical reports documenting this condition, following a hearing, a hearing officer issued a decision finding Petitioner guilty of failing to supply a urine sample. Id. at 3. This incident resulted in the loss of forty-one days of good time credit. Id. The second discipline incident occurred in October/November 2024. Id. at 4. According to the petition, this incident was caused by procedural errors by Houston House employees resulting in confusion regarding the scheduled time of Petitioner's arrival at a cardiology appointment; Petitioner was charged with breach of his duty to call "on arrival." Id. Following a hearing, the disciplinary hearing officer made the finding that Petitioner failed to call on arrival. Id. He was sanctioned with the loss of fourteen days of good time credit, as well as an additional loss of twenty-eight days of non-vested good time credit because of multiple incidents within a fixed period of time. Id. at 5. Petitioner appealed both discipline findings to FBOP's Northeast Regional Director in Philadelphia,

Pennsylvania, arguing that he is innocent of misconduct and that there was an array of procedural irregularities of constitutional dimensions that tainted the proceedings. Id. at 3, 5. According to the McFarland Declaration, ¶ 15, those appeals were procedurally rejected. The petition concedes that Petitioner has failed to fully exhaust administrative remedies, which he alleges is due to futility because of the imminence of his pre-discipline release date (December 14, 2024). ECF No. 1 at 2.

Based on this discipline, on November 4, 2024, FBOP removed Plaintiff from the Houston House and returned him to incarceration, with temporary placement at the Wyatt. ECF No. 1-1 at 1-2. Petitioner's filings confirm that he was fully aware that his placement at the Wyatt was temporary. E.g., ECF No. 1-1 at 2 ("petitioner is now in the temporary custody of . . . Wyatt"). Petitioner alleges that the Wyatt declined to allow him to leave the facility to attend previously scheduled diagnostic medical appointments with Rhode Island specialists. ECF No. 4 at 2 (Petitioner missed colonoscopy, carotid ultrasound study and urinary testing); see ECF No. 5 at 9 (Wyatt refused to escort Petitioner to scheduled appointments without FBOP approval). Because he was no longer at the Houston House and able to access the community in Rhode Island, Petitioner not only missed previously scheduled medical appointments but also lost access to ongoing medical treatment by Rhode Island-based providers and specialists, as well as access to a church that he had been attending. The lost access to medical treatment includes cardiology, urology, an orthopedic surgical consultation, rheumatology, a relationship with a psychologist and participation in AA and NA. ECF No. 5 at 5-6 & n.1. And because of the loss of good time credit due to the discipline, Petitioner's incarcerative sentence was extended from December 14, 2024, to March 5, 2025, postponing his commencement of supervised release in the District of Vermont.

Within a month of temporary placement at the Wyatt, on December 5, 2024, FBOP transferred Petitioner out of Rhode Island back to an FBOP facility in Pennsylvania. ECF No. 7 at 4. Ultimately (as of December 13, 2024), the McFarland Declaration establishes that Petitioner is now placed at FCI Loretto in the Western District of Pennsylvania where he remains incarcerated in FBOP custody to serve the remainder of the incarcerative portion of the Vermont sentence. McFarland Dec. ¶ 10. Petitioner's current custodial location is confirmed by the FBOP public inmate locator. See Federal Bureau of Prisons, Find an Inmate, https://www.bop.gov/inmateloc/ (last visited on December 27, 2024).

During the brief period (from November 4 to approximately December 5, 2024) while Petitioner was in FBOP custody temporarily placed at the Wyatt in Rhode Island, he mailed the habeas petition to the District of Rhode Island (and the motion to commute to the District of Vermont). The habeas petition challenges FBOP's discipline based on Petitioner's argument that he was innocent of misconduct, that the disciplinary hearings and related proceedings were so procedurally deficient as to deprive him of his constitutional right to due process of law, and that the first discipline incident was in derogation of his rights not to be discriminated against based on the disability that caused his inability to produce a urine sample. The petition asks this Court to void the discipline findings, reinstate his goodtime credit, making him immediately eligible for supervised release to begin, coupled with his stated intent to seek transfer of supervision from Vermont to Rhode Island (ECF No. 5 at 12). ECF Nos. 1 at 3; 1-1 at 21. In his "supplemental claim," Petitioner adds to the petition the request that the Court order that he be transferred back to the Houston House where he claims he was getting the medical care he needs and doing well. ECF No. 4.

II.     **Standard of Review, Applicable Law and Analysis Regarding IFP Motion**

Based on the pendency of the IFP motion (ECF No. 3), this habeas petition is subject to mandatory initial screening.[5] 28 U.S.C. §§ 1915(e)(2) and 1915A; Munir v. Superior Ct., C.A. No. 22-39MSM, 2022 WL 669699, at *2 (D.R.I. Mar. 7, 2022), adopted sub nom. Munir v. Rhode Island Superior Ct. Corp., C.A. No. 22-039-MSM-PAS, 2022 WL 844233 (D.R.I. Mar. 22, 2022). Thus, pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must dismiss the petition if "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Id. at *1 (internal quotation marks omitted); see Fuentes v. Coyne-Fague, C.A. No. 20-000111-WES, 2020 WL 8970624, at *1 (D.R.I. Mar. 24, 2020), adopted by text order (D.R.I. May 21, 2020). In exercising its duty to screen, the Court may take judicial notice of the FBOP public database,[6] which reflects that Petitioner is now in the custody of the Warden of FCI Loretto in the Western District of Pennsylvania. See Federal Bureau of Prisons, Find an Inmate, https://www.bop.gov/inmateloc/ (last visited on December 31, 2024).

I recommend that the petition be dismissed without prejudice to being refiled in the Western District of Pennsylvania or to the arguments being pursued in the District of Vermont

---

[5] I note that the Respondent's motion to dismiss (ECF No. 7) frames the same issues that I am addressing by way of screening. I have taken this approach in light of the urgency of Petitioner's concerns as reflected in his injunctive relief motions. That is, the motion to dismiss is newly filed and its consideration must be delayed until Petitioner has had an opportunity to file an opposition and Respondent an opportunity to reply. Further, this motion to dismiss raises issues that rely on a declaration and may require conversion to a motion for summary judgment, resulting in more delay. See, e.g., Gonzalez v. Grondolsky, 152 F. Supp. 3d 39, 41 (D. Mass. 2016) (motion to dismiss converted to motion for summary judgment "because [r]espondent submitted materials which went outside the facts alleged in the petition"). To sidestep this delay, I have issued this screening recommendation so that Petitioner is alerted promptly to the risk that his legal arguments cannot be asserted in the District of Rhode Island but must be pursued in the District of Vermont (where they are already pending) or by filing a habeas petition in the Western District of Pennsylvania.

[6] See Bergevine v. D.C.Y.F., C.A. No. 21-cv-459-WES-PAS, 2021 WL 5997649, at *2 (D.R.I. Dec. 20, 2021) (court may take judicial notice of facts on the public record), adopted by text order (D.R.I. Jan. 7, 2022); Griffey v. Colechia, Civil Action No. 07-1457, 2008 WL 238589, at *2 (W.D. Pa. Jan. 28, 2008) ("the court may, in performing its screening under 28 U.S.C. § 1915(e), consider matters of which it may take judicial notice").

where they are already pending. This recommendation is based on the analysis in <u>Mendez v. Martin</u>, C.A. No. 15-408ML, 2016 WL 2849598 (D.R.I. Apr. 19, 2016), <u>adopted</u>, 2016 WL 2732182 (D.R.I. May 10, 2016), which holds that a habeas petition challenging the loss of goodtime credits filed while a petitioner was temporarily at the Wyatt is subject to dismissal because of the petitioner's transfer to an FBOP facility outside of Rhode Island leaving no person in Rhode Island with custody over the petitioner. <u>Id.</u> at *3-7; <u>see</u> 28 U.S.C. § 2241(a) ("Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions."); 28 U.S.C. § 2242 (respondent to § 2241 habeas petition is "the person who has custody over" the petitioner); 28 U.S.C. § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained.").

Nor can Petitioner rely on the exception created by <u>Ex parte Endo</u>, 323 U.S. 283 (1944). <u>Endo</u> applies when the petitioner properly filed the habeas petition against the immediate custodian and thereafter is transferred outside the district court's territorial jurisdiction, but is limited to cases "where a person in whose custody [the petitioner] is remains within the district." <u>Id.</u> at 306. As the Ninth Circuit held in <u>Smith v. Idaho</u>, "when a habeas petitioner has failed to name the proper respondent . . . , we must ask *sua sponte* whether the respondent who *is* named has the power to order the petitioner's release. If not, the court may not grant effective relief, and thus should not hear the case unless the petition is amended to name a respondent who can grant the desired relief." 392 F.3d 350, 355 n.3 (9th Cir. 2004) (emphasis in original); <u>see</u> <u>Rumsfeld v. Padilla</u>, 542 U.S. 426, 440-41 (2004) (distinguishing between a court's initial acquisition of jurisdiction over a petition and its ability to grant habeas relief). Thus, this Court's analysis must focus on whether the Warden of the Wyatt (the only Rhode Island-based respondent) has the power to afford Petitioner the relief he seeks should the writ issue, mindful

9

that, because he is merely the employee of a quasi-public corporation that contracts with a federal agency, his authority is even more attenuated than if he were a BOP warden. See Mendez, 2016 WL 2849598, at *5. As in Mendez, I find that it is pointless to proceed in the District of Rhode Island, where the writ would be toothless in that the only person in Rhode Island, the Wyatt Warden, lacks the authority to produce the body of a prisoner in the custody of an FBOP warden in the Western District of Pennsylvania.

My recommendation of dismissal is not altered based on consideration of a post-Mendez decision from the District of Massachusetts, Yancey v. Warden, FMC Devens, 682 F. Supp. 3d 97 (D. Mass. 2023). In Yancey, the court addressed a habeas petition filed while petitioner was held at an FBOP facility located in Massachusetts (FMC Devens); after the petitioner was transferred to an FBOP facility in Texas, the court declined to dismiss the petition, holding that there is "no dispute that the court properly acquired jurisdiction at the time [petitioner] filed the petition challenging the BOP's computation of his sentence, and the BOP continues to operate within the district, meaning there remains an official within the district who may carry out any order the court may issue." Id. at 98-100. Yancey is distinguishable because, unlike Massachusetts where there is an FBOP facility (FMC Devens), Rhode Island has no such facility.

Nor do I recommend transfer in lieu of dismissal – with a motion that seeks all of the same relief Petitioner has asked this District to order already pending in the District of Vermont, Petitioner may well opt to proceed there rather than pursuing a § 2241 habeas petition in the Western District of Pennsylvania. Nor do I recommend dismissal on the merits at screening based on Petitioner's admitted failure to exhaust; given the timing of Petitioner's good time release dates, I find that the proper court may well find that the proximity of the release date is sufficiently supportive of his futility argument. See Iler-Reyes v. Warden, FCI Berlin, No. 23-cv-

10

553-SM-AJ, 2024 WL 1773616, at *3 (D.N.H. Apr. 3, 2024) (mindful of timing of release date and of time to exhaust FBOP remedies, court declines to dismiss § 2241 petition based on failure to fully exhaust), adopted sub nom. Iler-Reyes v. Berlin, 2024 WL 1770776 (D.N.H. Apr. 24, 2024).

Based on the foregoing, I recommend that this § 2241 petition be dismissed without prejudice at screening because no person within this District has custody over Petitioner. Based on this recommendation, I further recommend that Petitioner's IFP motion be denied as moot.[7]

### III. Standard of Review, Applicable Law and Analysis of Motions for Injunctive Relief

Mindful that the Court may not adopt my recommendation that the petition be dismissed, I turn briefly to Petitioner's motions for injunctive relief,[8] which ask this Court to order that FBOP must return Petitioner to Rhode Island and release him to the Houston House while his habeas petition is litigated in this Court. Further, recognizing that success on the petition means the end of the incarcerative sentence and the beginning of his eight-year term of supervised release, which must be served in Vermont unless jurisdiction is transferred to another District pursuant to 18 U.S.C. § 3605, Petitioner also asks this Court to issue an order to prevent his return to the District of Vermont, which is the Court with jurisdiction over his criminal case. Petitioner supports his motions with his own sworn statements; that is, there is no medical

---

[7] If the Court does not adopt this recommendation, the IFP motion (which still requires payment of the $5 filing fee) cannot be granted until Petitioner files the required certified inmate trust account statement. See 28 U.S.C. § 1915(a)(2); Rule 3(a) of Rules Governing Section 2254 Cases in the United States District Courts.

[8] As of the day the petition was placed in the prison mailbox, Petitioner was still temporarily at the Wyatt. Therefore, the injunction relief motions also asked this Court to order the Warden of the Wyatt to refuse to transfer Petitioner per the instructions of FBOP. By the time the petition was docketed, Petitioner had already begun transfer to an FBOP facility in Pennsylvania. By the time the motions for injunction were referred to me, Plaintiff was incarcerated at FBOP's FCI Loretto in the Western District of Pennsylvania. Therefore, I recommend that Petitioner's request for an order directing the Warden of the Wyatt to refuse to comply with the transfer instruction from FBOP be denied as moot.

11

evidence to support his claim of irreparable harm, nor has Petitioner supplied any documentation supportive of the merits of his challenge to the discipline in issue.[9]

"A preliminary injunction is an extraordinary remedy never awarded as of right."  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008).  A petitioner seeking "a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  Glossip v. Gross, 576 U.S. 863, 876 (2015) (internal quotation marks omitted).  Likelihood of success and irreparable harm are the factors that weigh most heavily in the analysis.  See Esso Std. Oil Co. (P.R.) v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006); see also Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011).  The burden of proof is on the movant.  See Esso Std. Oil Co. (P.R.), 445 F.3d at 18.

Apart from the inadequacy of the evidence of success on the merits and irreparable harm, there are two other flaws – both fatal – that require the denial of Petitioner's injunctive relief motions.

First, the District of Rhode Island lacks jurisdiction over either Petitioner's criminal case, whose jurisdictional home is in the District of Vermont, or Petitioner's current custodian, the FBOP Warden of FCI Loretto in the Western District of Pennsylvania.  Petitioner's contact with Rhode Island was based solely on FBOP's discretionary use of the Houston House for his reentry placement and the Wyatt for temporary incarceration pending transfer back to the Western District of Pennsylvania.  As far as the Court is aware and the record reflects, there is no FBOP

---

[9] As to this deficiency, Petitioner advises that FBOP has such documentation and asks it to supply him with copies of the materials related to medical treatment and discipline he sent to the Northeast Regional Reentry Coordinator with his FBOP appeal of the decisions of the disciplinary hearing officer and the unit discipline committee.  ECF No. 1-1 at 1 n.1.

facility in Rhode Island and therefore no person over whom this Court has jurisdiction who has the power or authority to require the transport of Petitioner from an FBOP facility in the Western District of Pennsylvania to be released to reside at the Houston House in Rhode Island. The Wyatt is not an FBOP facility and its Warden is not an FBOP official or employee; rather, it is a quasi-public entity created under Rhode Island law that has a contract with a federal agency. See Glennie v. Garland, C.A. No. 21-231JJM, 2023 WL 2265247, at *14 & nn.21-22 (D.R.I. Feb. 28, 2023) (describing legal nature of Wyatt), adopted by text order (D.R.I. Apr. 13, 2023). Thus, its Warden does not have the authority to carry out the injunctive relief orders that Petitioner requests. See Mendez, 2016 WL 2849698, at *5. Nor has Petitioner named any other person located in the District of Rhode Island who possesses such authority.

Second, to the extent the motions seek an injunctive order of this Court changing the place of execution of Petitioner's term of confinement as part of his original sentence of incarceration, the Court is without jurisdiction to consider the motion because such a decision by FBOP is not judicially reviewable. See United States v. Fuller, 211 F. Supp. 2d 204, 205 (D. Me. 2002) (citing Eaton v. United States, 178 F.3d 902, 903 (7th Cir. 1999)); see Brown v. United States, 610 F.2d 672, 677 (9th Cir. 1980) (judicial review of exercise of discretionary authority cannot be accomplished even through medium of federal habeas corpus). And to the extent that the motions ask this Court to transfer jurisdiction over his supervised release from the District of Vermont to the District of Rhode Island, the law requires that such a request be addressed to the sentencing court – the District of Vermont – and must comply with the requirements of 18 U.S.C. § 3605, which governs such a transfer of jurisdiction. See Fuller, 211 F. Supp. 2d at 205-06.

Based on the foregoing, I recommend that the Court deny without prejudice all of Petitioner's motions (ECF Nos. 2, 5, 6) for injunctive relief leaving Petitioner free to present these arguments in the appropriate forum.

### IV. Conclusion

I recommend that the petition (ECF No. 1) be dismissed without prejudice and that the IFP motion (ECF No. 3) be DENIED as moot. As to Petitioner's motions for injunctive relief (ECF Nos. 2, 5, 6), I recommend that they be DENIED without prejudice.

Any objections to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen days of service of this report and recommendation. See Fed. R. Civ. P. 72(b); DRI LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See Brenner v. Williams-Sonoma, Inc., 867 F.3d 294, 297 n.7 (1st Cir. 2017); Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
December 31, 2024